May it please the Court, Chris Stender on behalf of the petitioner, Mr. Padilla-Sarmiento. It's the petitioner's position that this case requires remand, both on the asylum claim and on the withholding claim, based on six discrete errors that the immigration judge made during her decision. It's also our position that the evidence already of record and the findings made by the immigration judge regarding the CAT claim would compel this Court to grant the Convention Against Torture claim. Regarding the first error made by the immigration judge, and I think somewhat very troublingly, the immigration judge ---- Kennedy, I'm reading the decision. Aren't you seeking review of the BIA decision? There are separate errors by the BIA decision. This is not a rubber-stamp case where we have to look at the I.J. Well, the ---- Educate me as to why you keep talking about the I.J. rather than the BIA. Because the BIA affirms the conclusions, and therefore, I read that as adopting those conclusions. Go ahead. In the second paragraph, it says, We affirm the conclusions of the immigration judge finding, and it states what her conclusions were in that ---- in those matters. The first error made by the immigration judge, and I think quite troublingly, is the immigration judge redefines the particular social group herself to tattooed youth and current gang members. This was not the social group that was put forth by her then counsel at the hearing, and it was described in the brief as Hondurans with gang tattoos returning to Honduras or any Honduran suspected, young Honduran male suspected of gang activity, and this in conjunction with the zero tolerance of the Honduran government where they explicitly target suspected gang members. I would redefine that a little bit more simply into former gang members that are perceived to be gang members, and I think that was the appropriate ---- I'm sorry. Why isn't our case law in Artiega, and the BIA has a case as well, preclusive of that claim? The two BIA decisions, matter of EAG and matter of SEG, never ---- How about Artiega, our case? Well, I think that the problem with the former social group, it is recognizing former status, like former military, former police, can be a distinct social group. The immigration judge finds that to be true in her own decision, and yet ignores it when she makes her analysis. Also, the two ---- I think importantly, the two BIA decisions, EAG and SEG, never get to the Catt claim. Catt was never made, and the immigration judge in her ---- That's a different issue. I mean, I thought at the moment you were arguing about the particular social group. I am. And I think, again, the problem with the immigration judge's decision is that she is making a conclusion that the two BIA decisions never even existed. I mean, it's not that she agrees with the Catt claim. So with regard to the Catt claim, what ---- the BIA itself did address the Catt claim, right? I would argue that they didn't. They make a conclusory statement. That's not a good argument for you. I think you should argue they did. But tell me why you think they didn't. It says right at the end the Respondent failed to establish he'd be more likely than not to face torture at the instigation or what they call willful blindness so as to be granted protection under Catt. Why didn't they address it? They addressed it. You may not like the way they addressed it, but certainly there's no ---- Problem one, is there an exhaustion problem with regard to Catt? Did you exhaust it? Did the Petitioner exhaust it? Yes. The Petitioner, former counsel, didn't raise it. I think the Petitioner did. He was in the notice to appeal and was argued at trial. And the BIA did address it. And the BIA did address it. So I think it's squarely before this Court, and we, of course, addressed it in our brief. What I wanted to get to on that issue where the BIA in this decision says that there was harmless error in the immigration judge disallowing the witness testimony of Mr. Avila, and then they cite a matter of EAG. Again, that in and of itself is clear error because Mr. Avila was going to be a witness to the Catt claim. EAG doesn't go to the Catt claims. At least to all. Well, probably to all, but at least he himself was granted Catt. He was in the same gang. He had he was a witness in the first instance. He came forward to give his testimony and gets to my second error that the immigration judge makes is she cites that there has to be a confidentiality waiver. Now, the problem with the confidentiality waiver is twofold. The regulation itself speaks to only that asylum claims and credible fear and reasonable fear are subject to the confidentiality provision, and that a waiver must be sought under ACFR 1208.68. Did that regulation even apply here? That's my point. I think it doesn't. I don't think it applies to withholding claims or to Catt claims. Well, I mean, just forget the nature of the claim. Did it apply at this particular hearing? Well, it did for a number of reasons. I think because the regulation number two is there is a waiver in the record. It's in the administrative record at 402, and it was submitted and signed by the   It's not the purpose of the regulation. Well, the purpose of the regulation is to protect confidential information from being released to other government agencies. Right. So it's to protect the person from somebody else releasing it. It's not to protect him from him releasing it. Right. Well, yes. But, see, it's used as a sword here to prevent the Petitioner from presenting evidence, which he has a right to do by statute, present witnesses in his favor. Two times the witness came forward and tried to testify to his own personal experiences and what happened to him when he returned to Honduras. The judge cites the confidentiality waiver and excludes it, but yet it's still marked in the record and administrative record in 402 that there is a waiver. And whether or not a waiver is even required I think is speculative. If you look to the regulation, it doesn't address withholding or Catt claims. What he was going to testify to and his counsel said it was crucial to his claim, and I think it was, because when the immigration judge looks to the Petitioner's testimony and looks to the Petitioner's mother's testimony, she doesn't believe it and she excludes it on how former gang members are treated by airport officials and by police officials. I thought she credited everything, but just didn't think it was sufficient. Well, she finds everybody credible, but then she cites double hearsay because the Petitioner's mother heard this testimony from somebody else and then excludes it and really gives it no weight. When she had a witness, Mr. Avila, in the first person, who would have testified at the hearing to what this treatment was like, and yet she excludes that testimony. That's another very, very important error because, again, using that confidentiality waiver as a sword, he's not permitted to present this witness testimony. And then when she looks to the record, she finds fault and a lack of evidence and a failure to carry the burden on the very issue where she prevents the testimony from being taken into the record by the court. So what relief do you want? I think there's enough in the record here based on the immigration judge's findings to grant the Catt claim. I think the record would proper him if we agreed with you that the IJ misapplied this regulation, that the remedy should be to remand for a new hearing on the Catt claim where he could present this witness's testimony? Yes. It would be much, much better. I think there's enough in the record already. Regarding the asylum withholding claims, I think definitely there has to be a remand. Again, because of the reinterpretation of a particular social group and the exclusion of the evidence, especially of that particular witness. Is it your position that for the Catt group, he doesn't have to be a member of a particular social group? Correct. Yes. Was that issue raised before the BIA? Well, I'm sorry. There's no nexus with the Catt claim. There's no nexus on account of with the Catt claim. Oh, I see. Okay. Another error that the immigration judge raises, and she looks at a statistical analysis and finds that based on the statistics that she can find in the reports that there's a very small chance that this Petitioner would be harmed or persecuted if he was returned to Honduras. This is a clear error also. Matter of VAG, the immigration the Board of Immigration Appeals itself finds that there is no statistical analysis that should be engaged in assessing these claims. So that's, I think, another clear error that the immigration judge makes. Also, I think somewhat troubling, the immigration judge makes a claim, she says specifically there's no evidence that the government consents or acquiesces in torture, but yet she finds in the same paragraph, I believe, documentary evidence that gang and former gang members in Honduras have been executed by paramilitary groups. So this really is either ignoring the evidence of record or somehow reinterpreting it when the judge makes these specific discrete findings, but then rules ultimately just on acquiescence. Doesn't the country report? I have a note here that the Petitioner admitted that the country persecuted or prosecuted torturers. There is some evidence, but there is evidence, too, of complicity in that there are vigilante groups, and the immigration judge found that he had a well-founded fear of persecution by vigilante groups, by paramilitary groups, and that it's reasonable in light of the country conditions that demonstrate that gang members and perceived gang members face the possibility of being beaten, killed or tortured. All these findings are made by the immigration judge. And apparently, I've exhausted my time. Where the immigration judge fails to make the connection on the CAD claims and the acquiescence, and therefore, I think we need a remand so we can present that further testimony of the witness. Thank you. Thank you. Good morning, Your Honor. May it please the Court, Dan Goldman on behalf of the Attorney General. This Court should uphold the agency decision and deny the petition for review. The Board, the Board's decision is on review here today. The Board correctly concluded that under its controlling precedent, the EAG decision, which takes into account this Court's decision in Arteaga, that Mr. Padilla-Sarmiento's quote, former gang membership or perceived former gang membership does not constitute membership in a particular social group. But I've heard from Mr. Stender that you don't have to have a nexus for your CAD claim. Do you agree with that? That is correct, Your Honor. The point, to take them in order, Your Honor, is that the asylum application and withholding application there, there is a required nexus. Under the case law, under EAG, under Arteaga, Mr. Padilla-Sarmiento had to establish a nexus to a protected ground. He failed to do so. To address Your Honor's question, with regard to CAD protection, there is no requirement for a protected ground. But what Mr. Padilla-Sarmiento did have to show and where he failed to meet his burden of proof was to establish the Honduran government acquiesced or was willfully blind or willfully inactive as to what was going on. There is specific evidence in the record that addresses that point, and the immigration judge relied on it. Do you think he should have been allowed to present the testimony of Mr. Avila? I'm sorry, Your Honor? Do you think he should have been allowed to present the testimony of Mr. Avila? Not without a proper waiver, Your Honor. Why? I'm sorry. I'll try and answer both questions, Your Honor. It's the same question, twice. Same question. The answer, Your Honor, is Mr. Avila was represented by counsel. At the time of the first hearing, inferentially. Inferentially, not at the time of the second hearing, because he had already been granted relief. Your Honor, he says specifically on the record at page 249 that he did not discuss his the possibility of testifying, did not discuss a waiver. There is an extra waiver. Is that the first hearing or the second hearing? I believe that's the first hearing, Your Honor. Right. But at the time of the second hearing, he had already gotten his relief. So what's the problem? I mean, I'm not sure there's a problem in the first hearing, but let's take the second hearing. First hearing. I mean, I'm not sure it's true that he's disabled from doing anything without his lawyer. But leaving that aside, by the time of the second hearing, he had gotten his relief. So what's the problem? A couple of responses to that, Your Honor. First, it's at page 255 of the record where the immigration judge is talking about this is not simply a question with regard to the regulation. There's also, I believe the judge uses the word, a bar issue. He's talking about the fact that this is an individual who is represented by counsel, and it is improper to question him. At the time of the first hearing. But what about the second hearing? Your Honor, I don't believe that at the time of the second hearing that Mr. Avila specifically said, I'm no longer represented by counsel. But he came in and he wanted to testify, and we know he'd already been granted relief, so what was the problem? One of the problems, Your Honor, just to speculate as to what could happen, and this is why the immigration judge was, I would argue, correct in being very cautious here, is that what if Mr. Avila had testified? What if Mr. Avila was cross-examined by the government? What if Mr. Avila then made admissions or gave contradictory testimony, and then the government comes back and tries to revoke or tries to institute proceedings to revoke the prior grant of relief, that case could wind up in front of an immigration judge on the revocation, and presumably his counsel would stand up yelling and screaming, saying, wait a minute, you questioned my client without him talking to me, without me present, without my consent. But doesn't the the – there's a written waiver that said he did talk to his lawyer. There is a written waiver, Your Honor, and Mr. Because he talked to his lawyer. That's what the written waiver says. He specifically asked, have you talked to your counsel about this, and he says, no, I have not. And that's where the immigration judge says, hold on, we're not going to – we're not going to question someone who is, number one, represented by counsel, and number two, specifically says on page 249 of the record, no, I have not talked to my counsel. Kagan. The Board never addressed any of this, right? Because the Board took the view that it was harmless error with respect to the withholding, which it probably was, and then never addressed it with regard to the PAC claim. So it never – it never approved any theory for excluding him. It did not specifically address the potential effect of Mr. Avila's testimony with regard to a CAT claim. It did with regard to withholding an asylum. But all he said was it was harmless. They didn't address the merits of the question of whether he should have been allowed to testify. With regard to CAT, you're correct, Your Honor. They did not specifically address it. Or with regard to withholding either. I mean, with regard to withholding in a very indirect way, all it seems to be saying is it didn't matter. That's correct, Your Honor. So the BIA has never ruled on whether this exclusion was proper? I would take issue with that, Your Honor, only to the extent that the Board – what the Board said with regard to asylum and withholding was that even if the immigration judge erred or there was any issue with regard to Mr. Avila's testimony, it was harmless. Okay. That's withholding and asylum. Because anything he could have said, Mr. Padilla-Sarmiento's claim still would have failed. But the BIA did not address the question, due process question, of whether Mr. Avila should have been allowed to testify, and it wasn't – and didn't address it at all with respect to the CAT claim, didn't say it was harmless, and didn't say on the merits that it was right, didn't say anything about it. Your Honor, you're correct in that the Board did not specifically address it in its admittedly brief. Why don't you just say yes, because the answer is yes. I don't understand what you have to – what you're trying to say. Your Honor, the Board – I can say yes, but the Board makes a finding on CAT. That claim – that finding from the Board is admittedly brief, but the Board is not required to write an exegesis on the CAT claim, and specifically, Mr. Padilla-Sarmiento never argued to the Board, never argued to the Board that Mr. Avila's testimony was relevant to his CAT claim. But it obviously was. I mean, it was – it wasn't presented with respect to any particular piece of this. It was respected – presented to say what happened to him when he went back to Honduras. And why wouldn't it be? I mean, there's – it wasn't specific to the protected social class question. It was specific to what happened to a person like this, like Mr. Padilla, when he went back to Honduras. I think Your Honor's correct, but where that argument ultimately fails is that we don't know. It's not in the record. There's no proffer, there's no statement, there's nothing from Mr. Avila that says here's what I would have said. There's a statement from counsel in a witness list. That's not evidence. There's statements on the record when Mr. Padilla-Sarmiento's counsel is trying to call Mr. Avila, but there's no statement from Mr. Avila. And where – and the – For what possible reason would the BIA mention it with regard to the withholding in asylum claims and not mention it with respect to the Catt claim and be taken to have ruled on it with respect to the Catt claim? The answer to that, Your Honor, is that it – in order to resolve the Catt claim, they did not need to mention it, because where the Catt claim failed was not on a failure to produce more anecdotal evidence. That's what Mr. Avila presumably would have offered. This is what happened to me. It would have been anecdotal evidence, similar to the other evidence that Mr. Padilla-Sarmiento did produce and did put on the record. And which the I.J. said was hearsay and he didn't give it much weight. The I.J. found that not persuasive. It wouldn't have been hearsay. You're correct. It would not have been hearsay. It would have been, however, more anecdotal evidence. And where the Catt claim failed, where the Board found that Mr. Padilla-Sarmiento's Catt claim failed, was that he failed to show acquiescence or willful inaction by the Honduran government. And the record at 391, 393, 547, 521, there's various mentions of how whatever excesses, whatever abuses came as a result of the Monodoro policies in Honduras, that President Monodoro in Honduras had recognized that, that he had set up special investigative units, that individuals were being prosecuted. That indicates, that evidence indicates a lack of acquiescence and a lack of consent on the part of the Honduran government to the torture. And that's, that's where Mr. Padilla-Sarmiento's claim failed. And, and that's why, Your Honor, the Board did not err in not specifically mentioning the Catt, or the testimony of Mr. Avila, because Mr. Avila, all he could testify to, presumably, and again, we don't know, but all he could testify to was what happened to him. And again, there's a, there's a conspicuous absence in this case. There's a, a, even a proffer from Mr. Avila. There's absolutely no reason why, when this case went up to the Board on appeal, Mr. Padilla-Sarmiento did not submit a statement from Mr. Avila, saying. Well, presumably, that would have violated all the concerns that raised by the, by the IJ. Not, not necessarily, Your Honor. If he did that, and attached to it a waiver that says, yes, I said on the, on the record that I hadn't talked to my counsel. It's now several months later, I've talked to my counsel. We issue, we, we make a. So let me, let me ask you this. Do you, do you agree that the regulation that they relied upon, it really doesn't apply here? Do you agree with that? It wasn't the government that was offering all of this. It was, it was not the government that was offering it. That regulation really doesn't apply, does it? Your Honor, I'm hesitant to agree, only because. Well, I mean, the, the representative of the government didn't, you know, the, the counsel for the government didn't say, here, I want to, we want to produce these documents from his file. Here, from Mr. Avila's file, here they are. That's correct. And that, that certainly weighs in favor of Your Honor's interpretation. That's right. Isn't that the way you read the, isn't that the way the regulation should be read? Maybe I'm reading it and the government's reading it very conservatively and very cautiously. But this wasn't a criminal proceeding, was it? No, absolutely not. This is a civil proceeding. Civil proceedings. Correct? However, Mr. Avila did, apparently, again, we don't have a lot of information. I see my time is, is expiring. Just, just, just go ahead. Mr. Avila did apply for asylum, is the information we have in the record, I believe. The CAT claim, the withholding claim that Mr. Avila submitted, were all wrapped up together. So to redact out of that, we're not going to find the asylum part of the claim is barred by confidentiality rules, but not the CAT claim. No, but that's not the question. The question is, does the confidentiality rule, rules apply at all to, if I, myself, want to hand over the information as opposed to the government handing over the information? Your Honor, in this case, it's our position that the immigration judge did not err. Okay. All right. But even if they did, Your Honor, what the immigration judge specifically says on the record, I believe at page 255, is that this is not, that his refusal, the immigration judge's refusal to allow the testimony was not based solely on the regulation. There were other concerns. So the only concern here was that Mr. — that somehow or other the Petitioner's counsel was representing Mr. Avila at this hearing? Your Honor, we — what we don't know is who Mr. Avila was referring to in that written waiver that's in the record at, I believe, 411, where he says, I've talked to my counsel, because he comes into immigration court and says, no, I did not talk to my counsel. But he wasn't subpoenaed there, was he? I don't believe so, Your Honor. He showed up voluntarily. He showed up voluntarily, but he didn't — And he apparently was willing to testify. He apparently was willing to testify. And the I.J. said, well, you've got counsel and I'm not going to let you testify unless your counsel provides a waiver. Unless your counsel provides a waiver so that we can be assured that this was a knowing, informed waiver. Is this a criminal — I've asked you once before, this wasn't a criminal case, was it? No, absolutely not, Your Honor. But that's the problem here is that if the immigration judge erred in an abundance of caution and said, we're not going to let this individual testify because he has told us on the record — Do you think the BIA ought to set some — that'll look at this issue just to set some guidelines? The confidentiality issue? No. What are the I.J. supposed to do? What is counsel supposed to do when they want to call a witness like this? Does the BIA ever address this kind of problem? I would want to check, Your Honor. There's relatively limited case on that. But again, I don't think it's necessary for this Court to resolve that issue in order to — I said, do you think the BIA ought to resolve that question? In another case on another day, it's certainly a good topic. Do you think the BIA ought to resolve that question in this case? Did they need to or did they, Your Honor? Should they? No, Your Honor, because his testimony would not have established the required elements for the CAC claim. Let me ask you one question before I — at the time when the immigration judge said that he would not allow Avila to testify because he didn't think there was a knowing waiver, was there any motion for continuance to allow Avila to go out and get the waiver and come back in? Absolutely, Your Honor. And I apologize for not bringing that up earlier. The hearing was in December of 2006. It was when Mr. Avila was first called to the witness stand. That's when all of this came out. He hadn't talked to his counsel. The immigration judge said, we're not going to let you testify. The hearing proceeded. Mr. Padilla-Sarmiento's counsel stood up again and said, I'd like a continuance to try and get the waiver that you have asked for. And the immigration judge gave Mr. Padilla-Sarmiento a continuance over government objection, gave a continuance until the end of March, and specifically references in the record, that should be enough time for you to get the proper paperwork. They come back three and a half months later without the proper paperwork. This was not a situation where the case was called at 9 a.m. and the judge said, I'll tell you what, if you can get me a waiver by 10 a.m., you're good to go. They gave him three and a half months to get the proper waiver. They came back empty-handed. The judge said, the lawyer said that he already has no longer has a case ongoing. And the judge says, it doesn't matter what the outcome is. He says, I cannot accept anything related to another alien in his asylum claim without a waiver, written waiver, and that's ACFR. You keep saying he wasn't relying on that, but my reading is that he wasn't relying on anything but that. And that was after the case was over, and he knew the case was over, and he said he didn't care. Your Honor, if memory serves with regard to the regulation, it doesn't limit the confidentiality to an ongoing proceeding. Yes, but you came at least fairly close before to agreeing that the regulation doesn't even apply here. And then you said, but it doesn't matter because he was relying on this notion that he had to have a, you know, he had to be advised by a lawyer. I mean, if he had counsel, if he had been a pro se. He said before that he wasn't relying on the regulation. Now you're saying he was relying on the regulation, which is. I'm sorry. Is the regulation what was governing here or not? Your Honor, the immigration judge specifically says it's both the regulation he says it's not only, I believe, not only the regulation, but also the bar issue. And that's referring to the fact that Mr. Avila had counsel, and counsel was apparently nowhere involved in Mr. Avila's purported decision to testify. And particularly given the facts here where you have a written waiver submitted that says I've talked to my counsel, and then Mr. Avila comes into immigration court and specifically contradicts that, it's the government's position that for the immigration judge to be cautious in that situation should not be error. Okay. Thank you. Excuse me. For the Court's questions. Thank you, Your Honor. Thank you. Mr. Simpson, did you have? I did.  Thank you. The matter is submitted. Thank you for your arguments, counsel.
judges: Paez, Berzon, Bea